Counsel, I'll lob something up to get you started. I read the trial court, LaMal's, Judge LaMal's, and that's the way I would read the agreement between your panel told us that Boudreaux wins? Your Honor, absolutely. You just hit the crux of what I was going to take probably too much time to say. At the end of the day, the settlement agreement has to be read in the context of Judge Higginbotham's opinion in Boudreaux and the opinion itself that in order for Transocean to win on the argument they had to have won in the Fifth Circuit on the issue of whether or not they had the right to recover in terms of an affirmative cause of action under the General Maritime Law on a claim which prior to Boudreaux won had been acknowledged and had been preexisting as an affirmative defense entitling a Jones Act employer to an offset from a judgment. That's not our situation. We have a bracketed settlement agreement where no judgment was possible because Mr. Boudreaux dismissed his Jones Act General Maritime Law claims. Did Higginbotham's opinion, that panel, rule to that effect? On page 727, Judge Higginbotham said, though the viability of the McCorpin defense cannot seriously be questioned at this late hour, which no one did in this case, Transocean's novel attempt to extend the defense into an affirmative right of recovery finds virtually no support and we are not inclined to exceed. He goes on to say, we are urged to strike a new balance and allow an employer who establishes a McCorpin defense to automatically recover prior payments without requiring the employer to prove duplication and regardless of the outcome of the primary suit. In cases where no damages are recovered or the award is insufficient to offset the seaman's restitution, the employer would gain an affirmative judgment against the seaman. That's the crux of the issue in this case from the time that Transocean filed its answer through the time that we negotiated a bracketed agreement and through the time that we briefed and argued Boudreaux won. Well, I'm about through asking you all these favorable questions, but it seems to me that the prior panel and Higginbotham were looking at that and squarely at the settlement agreement too. This is part of it. This is the effect of what he's saying is you've got to make this ruling in view of the settlement agreement. He tied the entire opinion, Judge, because there's language in here where Judge, in fact, I hate to keep reading a case that everybody has read, but he goes on in the paragraph that I was just reading at 727, talks about the powerful effect an affirmative cause of action for restitution or recovery of maintenance and cure against a seaman would have on the potential to settle these type of cases. And then he says, the high-low settlement confected by the parties in this case evidences this very effect, hinging on whether the risk factor of affirmative recovery will be allowed by this court. And to Boudreaux, that ends the discussion, and it ends the appeal, and it entitles Boudreaux to the high amount under the settlement agreement. Did you have anything more to argue? I did, but maybe not. Actually, what I was going to say, Judge, is we touched on a lot of issues in our appeal brief, but at the end of the day, this comes down to simple federal common law contract construction, and a settlement agreement in particular has to be looked at in the context of the case in which the settlement agreement is perfected. It seemed like y'all were expecting a clean yes or a clean no, and not that, well, you can offset it against a judgment. That didn't seem to be in the cards when you agreed to the settlement agreement. It wasn't, Your Honor, because the offset preexisted the settlement agreement, and that's where I think we start to get confused and maybe conflate what the two parties are arguing. In Transocean's, well, let me step back. Transocean's counterclaim anchored itself by virtue of its wording to the Vitkovich 9th Circuit case. In paragraph 10 of their counterclaim, they say, Accordingly, Transocean is entitled to recover approximately $276,000 in change it paid to Boudreau in maintenance and curing wages, and it cites Vitkovich v. Ocean Rover. In the Vitkovich case, the Jones Act Seaman's claims had been dismissed. Negligence and unseaworthiness claims had been dismissed by summary judgment. Those claims were gone. There was nothing to offset. There's nothing to reduce. The 9th Circuit goes the step further, which is exactly what Transocean wanted the 5th Circuit to do, to bring the General Maritime Law of this circuit in line with the 9th Circuit and said, We are also going to allow a cause of action by the shipowner, the employer, for restitution in the amount of $17,000 in change against the Jones Act Seaman, who has collected nothing. So at the end of Vitkovich, Vitkovich has nothing, and the employer has a judgment for $17,000 in change. That was the issue that we were faced with when we settled this case. At the time of this settlement, the Johnson v. Sinak towing case had been decided by the 5th Circuit. Under the General Maritime Law, a violation of McCorpin was considered evidence of comparative fault, contributory negligence, another affirmative defense that Transocean pled. By virtue of that, if Boudreau had ultimately, had this case not been settled, case gone to trial, Boudreau wins on his Jones Act and unseaworthiness claim, but Transocean prevails on its McCorpin defense. Under the then-existing law, Transocean gets the exact offset from the judgment that they got, according to, that they received, that Judge Higginbotham referenced in Boudreau 1. The problem here is that an offset, a pre-existing offset under the law, which, if you recall, Judge Higginbotham said, what I'm doing today is making explicit what has always been implicit. It's always been there. All I'm saying is we're going to put it in writing today, which is McCorpin defense can be used to offset a judgment won by the seaman. That was never at issue in this case. The only issue in this case, and what we bargained for, and what Transocean wanted, and what we decided as plaintiffs to give them because of the situation our client's McCorpin violation put us in, was to say, okay, we'll high-low, we'll bracket this settlement, we'll take money up front, but we're entitled to additional money if you lose on the issue that's central to this settlement agreement. And that issue is can you extend the McCorpin affirmative defense to an affirmative cause of action that allows you to recover restitution, get money back from a seaman, if, in fact, you prove that defense at trial. That was the sole issue in this case. That's what you were thinking of, and that's why those words of recovery were put in the settlement agreement. That's exactly right. And if you look at it respectfully from Transocean's point of view now, where after cert is denied, the position changes, and the acknowledgment of a preexisting general maritime law right to offset is now considered a limited recovery under the settlement agreement, if that's true, if that's taken to its logical conclusion, then at the time the settlement was perfected, the plaintiffs could never have recovered the high of the high-low amount. It was impossible because the right to offset, the limited right of recovery, as it's been labeled by Transocean, existed when we cut the deal. Did that come up in the oral argument? That came up in the oral argument in Boudreau 1. I didn't argue Boudreau 1, but, yes, it did come up. I listened to it, and it did come up at the time Boudreau 1 was argued. And the language that was used by Wynn Clark, who's my colleague who argued Boudreau 1, was that had that been the case, it makes at least that piece, the high part of the high-low bracketed settlement, it renders it an illusory settlement because we could never get consideration. But we wouldn't enter a deal like that. There would be no reason for us to do that. The reason we cut this deal was we were willing, under the facts of this case, the position we were in vis-à-vis Transocean, do we try it, do we settle it, to say, okay, we are willing to allow Transocean to take this Res Nova issue, and it's repeatedly in this record described as a Res Nova issue, of whether or not there's an affirmative right to sue a seaman for recovery. Restitution is used by both Transocean and the court dozens and dozens of times in the pleadings and the orders that are filed in this record. Can Transocean convince the United States Fifth Circuit to create a new general maritime law cause of action for recovery or restitution of maintenance and cure paid in the event of a successful McCorpin defense? And the answer, as articulated by Judge Higginbotham, is no. In fact, he says we declined the invitation, and they reversed the trial court, and that's the end of it. It has to be the end of it because if it wasn't, why would Transocean then take the case to the Supreme Court for a writ of certiorari? That was the issue. That was the anchor upon which the settlement agreement was based. That's really all I have, judges. Thank you very much. Oh, I'm glad to hear you, sir. Good morning. Welcome. John Sheldotium, the counsel for Transocean. I'm hoping maybe you had some softball questions for me to start off with. But I think that counsel is taking the status of McCorpin before Boudreau won too far. If you look at the origins of McCorpin, it was that the Jones Act seaman was waiving his right to further maintenance and cure if he didn't disclose a condition that he came on board the vessel with. It has been, I think, a fairly pragmatic standard over the years. You filled out an application, but if you got on board the vessel with tuberculosis or you had a disease, you couldn't then tell the shipowner, hey, you've got to start to fund this for me. So it was a waiver of your right to recover, maintenance, and cure. In this instance, we had a very egregious circumstance, something that we thought set out the facts different from what we'd seen before under McCorpin, and that the person not only was diagnosed through an MRI with the exact same back condition, but they lied about it to the employer, they lied about it in their pleadings, they lied in discovery, lied in their deposition, and then finally admitted to it to the tune of over a quarter of a million-dollar detriment to the client. So we took that, yes, that we thought that in those circumstances, anybody who commits that kind of a tort against a defendant in a lawsuit ought to be exposed to any form of recovery that any plaintiff would have against somebody who took their money wrongfully by lying in federal court. So did we advocate a broad-based, unlimited affirmative action? Absolutely. That was our intent. But did McCorpin previously create an unambiguous standard that you automatically got an offset for what you had previously paid to them? I'd say no. If it was that obvious, the first panel would have come right down with it. The first panel didn't. They had to vacate that opinion and reenter a new opinion afterwards to enter what the court said was we need to make this explicit, what they believed was implicit. But if it was standing law, that would have, one, been recognized immediately in the initial opinion. They would have never had to vacate it and come back to it. And I don't think anybody from Judge LaMelle to the original panel would have said, this is novel, this is new, this is our first look at this. At the end of the day, I come back to what is a cause of action. And you can't have an offset. Even if the court treats it this way, you can't have an offset without first having a cause of action and having a right of action over the tort that was committed. The best example I can give is contributory negligence. We see it in ordinary cases all the time. You plead it as an affirmative defense. However, if you were in a workers' comp situation, if this was an LHWCA case, the plaintiff may have the factual requirements for having been contributory negligent for his incident, but by statute that right had been removed. And so you couldn't plead contributory negligence. You couldn't recover for it. So the only way that we would be able to have an offset was to first recognize that you had the facts, and then you would have to have a right, a cause of action, in order to ever be able to reduce the judgment that was against you. If I reverse and look at what at least our intent was, how I saw this, and I look at the mechanics of how the settlement agreement would work in comparison to what would happen if we had remanded this now and tried it, is there was a high and a low possibility for the plaintiff. The possibility was higher that if he had gone on to prove a negligence case, separate from his maintenance and cure, and there was no right to go back and recover maintenance and cure in any form or fashion that you had previously paid, then he would have recovered more money, regardless of what he had taken from our client. But if we had gone back and we tried the case and we had a right of recovery, whether it was an affirmative action against him that was not dependent on the judgment, or it was a right of offset, he would have recovered a lower amount of money. In my opinion and in my belief of how the bracketed settlement was structured in the very ordinary language that we used in it, that is the result. Under one result, you have the potential for getting more money if you go try your case. Under the other result, your potential is that you will recover less money, and those are typically the standards that you use to arrive at a bracket under which end of those two spectrums are you going to sit. The... I think the remainder of the arguments here have to do with whether or not we had a waiver and a stop on intent. Those arguments are more convenient after you've been through two panel hearings and it's come back, and now you're trying to dice it apart. In advance, when you're looking forward at what you're going to do, what we entered into was a very common-sense, plainly worded agreement that could not have contemplated that we were going to go up and that we were going to get what essentially is a hybrid result that came back. And there's no way in advance of that that we would have limited ourselves to saying, well, we're only looking for one little narrow niche. However, if in fact it was critical that there was this obvious cause of action that already existed and that it was very clear that that was there, that isn't the issue, it would have been easy in an apparent to have included that in the settlement agreement at the time that we did it. What we did was enter into a common-sense, plainly worded agreement that simply addressed recovery and addressed whether or not the plaintiff was at risk for more money or less money if he took his case to trial based on the plus one-quarter of a million dollars he defrauded our client out of. I believe if we are looking at fairness at the end of the day, because I think there's some element of that to Mr. Boudreau's claim and to why he brought this up, is he believes that there's not been a fair interpretation of what was the party's intent. I believe we have to do a plain, ordinary, common-sense interpretation of the party's contract, the settlement agreement. If, under that plain wording, this plaintiff does not recover more money, I can't say that that is an unfair result in this case under these facts. This plaintiff took a tremendous amount of money from this defendant, from Transocean, for admittedly lying in his pleadings, in his discovery answers, in his deposition, keeping them in a case for many years when he should not have. Any questions on that? I think that's as good as you can do, and that's a valiant effort. Thank you. Your Honor, very briefly, I don't really disagree with anything that was just said. The problem is, and I'm certainly not standing here condoning Mr. Boudreau's behavior because we didn't know about it either, but Mr. Boudreau's behavior and what he did to Transocean is not the issue. The issue is what was the party's state of mind when we confected this agreement in light of the then-existing law, what was trying to be accomplished by the agreement. And I want to point out two quick things. At the time, three years before this agreement was entered into the high-low bracket, in Johnson v. Synack Towing, the Fifth Circuit General Maritime Law case, stated, Contributory negligence may be found where a seaman has concealed material information about a pre-existing injury or physical condition from his employer, exposes his body to a risk of re-injury or aggravation of the condition, and then suffers re-injury or aggravation injury. Exactly what happened to Mr. Boudreau. He concealed a bad low back injury from everyone. It was exposed. He put himself out on that rig, and he re-injured the exact same part of his lumbar spine that had been diagnosed as having been injured two or three years before. That right of offset based on comparative fault, contributory negligence, affirmative defense that grows out of the McCorpin situation pre-existed our deal. That's the then-existing law. Then finally, in the Boudreau opinion, Judge Higginbotham says, In light of the party's bracketed settlement, this case turns on the purely legal question of whether a Jones Act employer who has paid maintenance and cure to a seaman injured in its employ is, upon successfully establishing a McCorpin defense, automatically entitled to a judgment against the seaman for benefits already paid. That is not an offset. That is an affirmative judgment where Transocean can go enforce a judgment for $276,000 against Mr. Boudreau if, in fact, they've proven McCorpin violations. That's the issue as it's framed by the Fifth Circuit. Then he says, and this is the key, Transocean made a strategic decision not to litigate this case on its facts. Rather, it asked this court to hold that any employer who establishes a McCorpin defense is automatically entitled to restitution. We decline the invitation. At that point, judges, we submit that the high-low bracketed agreement is satisfied. The plaintiff is entitled to the high because Transocean has failed in its attempt to create the new general maritime law affirmative cause of action for recovery. Thank you.